UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RACCOON VALLEY TRANSPORT, INC. and AUDRIUS LABACIAUSKAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ESPAR INC. and JOHN DOES 1-100,<br><br>Defendants. | No. |

## CLASS ACTION COMPLAINT

Plaintiffs Raccoon Valley Transport, Inc. and Audrius Labaciauskas ("Plaintiffs") allege the following based on the investigation of counsel, except as to the allegations regarding their own purchases, which are based on personal knowledge.

### I. INTRODUCTION

1. From at least as early as October 1, 2007 and continuing through at least until December 31, 2012 (the "Class Period"), Defendants Espar Inc. ("Espar") and its co-conspirators, John Does 1-100, participated in a combination and conspiracy to suppress and eliminate competition for the sale of parking heaters for commercial vehicles in the aftermarket. Defendant Espar and John Does 1-100 agreed to fix, stabilize, and maintain prices of parking heaters for commercial vehicles sold to aftermarket customers in the United States, including Plaintiffs and the Classes (defined below). Defendants' conspiracy unreasonably restrained interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

2. As a result, Plaintiffs and the Class were damaged. Plaintiffs bring this action to obtain injunctive relief and to recover damages, including treble damages, costs of suit, and reasonable attorneys' fees arising from Defendants' antitrust violations.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1367.

4. Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c), in that at least one of the Defendants resides in this judicial district, is licensed to do business or is doing business in this judicial district.

## III. PARTIES

5. Plaintiff Audrius Labaciauskas ("Labaciauskas") is a resident of Lakemore, Illinois. He purchased a parking heater manufactured by, on information and belief, one of Espar's co-conspirators, for his commercial vehicle during the Class Period. As a result of the conspiracy described herein, Labaciauskas was damaged and paid more for the parking heater than he would have in the absence of the price-fixing conspiracy.

6. Plaintiff Raccoon Valley Transport, Inc. ("RVT") is an Iowa corporation with its principal place of business located in Adel, Iowa. RVT purchased a parking heater manufactured by Espar for installation in one of its commercial vehicles during the Class Period. As a result of the conspiracy described herein, RVT was damaged and paid more for the parking heater than it would have in the absence of the price-fixing conspiracy.

7. Defendant Espar, Inc. is an Illinois corporation with its principal place of business located at 29101 Haggerty Road, Novi, Michigan 48377-2913.

8. On information and belief, Defendants John Does 1-100 are either residents of or doing business in this judicial district, are transacting business at premises in this judicial district,

and are subject to the jurisdiction of this Court. Defendants, alone or through their agents, servants or employees, are procuring, manufacturing, providing, distributing, marketing and/or selling parking heaters.

9. When reference in this complaint is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

10. Upon information and belief, parent corporations named herein exercised pervasive and excessive control over their subsidiary entities named herein such that the parent corporations controlled the subsidiary businesses as a whole and thereby conducted business in the United States. Moreover, upon information and belief, the subsidiary corporations named herein have acted as agents of their parent corporations in conducting business in the United States or selling products for use and distribution within the United States.

### IV. FACTS

11. Parking heaters are devices that heat the interior compartment of a motor vehicle independent of the operation of the vehicle's engine. Parking heaters are used in a wide variety of commercial vehicles.

12. Parking heaters sold by the Defendant Espar and its competitors included two primary types: air heaters, which work by heating interior or outside air drawn into the heater unit, and water or "coolant" heaters, which are integrated into the engine coolant circuit and heat the engine as well as the interior compartment.

13. As used in this Complaint, the term "parking heaters" includes the heaters themselves, accessories sold for use with heaters, and packages containing heaters and selected accessories (parking heater "kits").

14. On March 12, 2015, Defendant Espar pled guilty to "participating in a combination and conspiracy suppress and eliminate competition in the sale of parking heaters for commercial vehicles in the aftermarket by agreeing to fix, stabilize, and maintain prices of parking heaters, sold to aftermarket customers in the United States and elsewhere in North America, from at least as early as October 1, 2007 through at least December 31, 2012, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."[1]

15. According to the Plea Agreement and Information, during the Class Period, "for the purpose of forming and carrying out the charged conspiracy," Defendant Espar admitted that it and its co-conspirators, Defendant John Does 1-100, knowingly:

   a. participated in communications, discussions, and meetings in the United States and elsewhere to discuss aftermarket prices for parking heaters for commercial vehicles;

   b. agreed, during those conversations and meetings, to set a price floor for parking heater kits for commercial vehicles sold to aftermarket customers in the United States and elsewhere in North America;

   c. agreed, during those conversations and meetings, to coordinate the timing and amount of price increases for parking heaters for commercial vehicles sold to aftermarket customers in the United States and elsewhere in North America;

---

[1] Plea Agreement, ¶ 2, *United States of America v. Espar Inc.*, No. 15-cr-0028 (E.D.N.Y. March 12, 2015).

    d. exchanged information during those conversations and meetings for the purpose of monitoring and enforcing adherence to the agreements described in subparagraphs (b) and (c) above; and

    e. sold parking heaters for commercial vehicles to aftermarket customers at collusive and non-competitive prices in the United States and elsewhere in North America.

16. During the Class Period, Plaintiff and the other members of the Class purchased parking heaters by reason of the antitrust violations herein alleged, paid more for such products than they would have paid in the absence of such antitrust violations. As a result, Plaintiff and the other members of the Class have sustained damages to their businesses and property in an amount to be determined at trial.

## V.    TRADE AND COMMERCE

17. During the relevant period covered by this Information, the defendant and its coconspirators sold and shipped parking heaters for commercial vehicles in a continuous and uninterrupted flow of interstate and foreign trade and commerce to aftermarket customers located in states and countries outside the place of origin of the shipments. In addition, substantial quantities of equipment and supplies necessary to the production and distribution of such parking heaters, as well as payments for those parking heaters, traveled in interstate and foreign trade and commerce.

18. During the relevant period, the business activities of the defendant and its co-conspirators in connection with the sale of parking heaters to aftermarket customers that were the subject of the charged conspiracy were within the flow of, and substantially affected, interstate, and foreign trade and commerce.

## VI. RELEVANT MARKET

19. The relevant product market is the aftermarket for parking heaters for commercial vehicles ("Parking Heater Aftermarket").

20. The Parking Heater Aftermarket is a cognizable antitrust market. The boundaries of the Parking Heater Aftermarket are determined by the low cross-elasticity of demand between parking heaters and potential substitutes. A small non-transitory increase in price for parking heaters would not cause consumers of parking heaters to switch to any other product to provide heat to the interior of the vehicle when the engine is not running in sufficient numbers to defeat the price increase.

21. The Parking Heater Aftermarket is highly concentrated, with just several main competitors, including Webasto Thermo & Comfort North America, Inc. ("Webasto"). Webasto held a 75% market share in 2007, selling approximately $500 million per year in parking heaters.

22. The Parking Heater Aftermarket has high barriers to entry. The design and manufacture of parking heaters requires complex technology, know-how, and infrastructure. Manufacturers bear substantial upfront development costs as well as significant facility and other infrastructure costs. Entry barriers for parking heater manufacturers include patents. The cost of competing in the Parking Heater Aftermarket includes significant costs for marketing and advertising, as well as dealer training.

23. The geographic market is the United States.

## VII. CLASS ACTION ALLEGATIONS

24. All Plaintiffs bring this action both on behalf of themselves, and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b) (3),on behalf of the following class (the "Class" or "Nationwide Class"):

> All persons in the United States who purchased parking heaters for commercial vehicles in the aftermarket in the United States between October 1, 2007 and the present.
>
> Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

25. Plaintiff Raccoon Valley Transport, Inc. also brings this action on his own behalf and as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all members of the following Indirect Purchaser State Class:

> All persons who purchased parking heaters for commercial vehicles in the aftermarket in Arizona, California, the District of Columbia, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Utah, Wisconsin, West Virginia, between October 1, 2007 and the present.

26. Plaintiffs do not know the exact number of Class members because such information is in the exclusive control of Defendants. Plaintiffs believe that, due to the nature of the trade and commerce involved, there are most likely hundreds of thousands of Class members, geographically dispersed throughout the United States such that joinder of all class members is impracticable.

27. Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs all purchased parking heaters in the aftermarket. All Class members were damaged by the same wrongful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the class.

28. Numerous questions of law or fact arise from Defendants' anticompetitive conduct that is common to the Class, including but not limited to:

      a.      Whether Espar and its competitors, including John Does 1-100, engaged in a contract, combination, and/or conspiracy to fix, raise, maintain, or stabilize prices of parking heaters sold in the United States;

      b.      Whether Defendants' conduct caused the prices of parking heaters sold in the United States to be sold at artificially high and supra-competitive levels;

      c.      Whether Plaintiffs and the other members of the Class were injured by Defendants' conduct, and, if so, the appropriate class-wide measure of damages for Class members; and

      d.      The scope of any injunctive relief to which Plaintiffs and the other members of the Class are entitled.

      e.      These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

29. Plaintiffs will fairly and adequately represent the interests of the Class in that they have no conflict with any other members of the Class. Furthermore, Plaintiffs have retained competent counsel experienced in antitrust, class action, and other complex litigation.

30. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

31. This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

32. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## VIII.   FRAUDULENT CONCEALMENT

33. Plaintiffs had neither actual nor constructive knowledge of the facts constituting their claim for relief despite diligence in trying to discover the pertinent facts.  Plaintiffs and

members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until March 12, 2015 when the antitrust investigation by the DOJ became public. Defendants engaged in a secret conspiracy that did not give rise to facts that would put Plaintiff or the Class on inquiry notice that there was a conspiracy to fix prices for parking heaters in the aftermarket.

34. Plaintiffs are informed and believe, and thereon allege, that Defendants had secret discussions about price and output. Defendants agreed not to publicly discuss the nature of the scheme and gave pretextual justifications for the inflated prices of parking heaters in furtherance of the conspiracy.

35. Plaintiffs are informed and believe, and thereon allege, that Defendants' purported reasons for the pricing of parking heaters were materially false and misleading and made for the purpose of concealing Defendants' anti-competitive scheme as alleged herein. As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the Class members have as a result of the anti-competitive conduct alleged in this complaint.

## IX. CAUSES OF ACTION
## VIOLATIONS OF 15 U.S.C. § 1

36. All Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

37. Beginning in October 2007 and continuing at least through December 31, 2012, with the effects continuing to the present, Defendants have engaged in a conspiracy and agreement in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

38. Defendant Espar admitted that it and its co-conspirators, Defendant John Does 1-100, knowingly:

(a) participated in communications, discussions, and meetings in the United States and elsewhere to discuss aftermarket prices for parking heaters for commercial vehicles;

(b) agreed, during those conversations and meetings, to set a price floor for parking heater kits for commercial vehicles sold to aftermarket customers in the United States and elsewhere in North America;

(c) agreed, during those conversations and meetings, to coordinate the timing and amount of price increases for parking heaters for commercial vehicles sold to aftermarket customers in the United States and elsewhere in North America;

(d) exchanged information during those conversations and meetings for the purpose of monitoring and enforcing adherence to the agreements described in subparagraphs (b) and (c) above; and

(e) sold parking heaters for commercial vehicles to aftermarket customers at collusive and non-competitive prices in the United States and elsewhere in North America.

39. As a result of Defendants' unlawful conduct, prices for parking heaters were raised, fixed, maintained and stabilized in the United States.

40. As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class have been injured in their businesses and property in that they have paid more for parking heaters than they otherwise would have paid in the absence of that conduct.

41. In this Count I, Plaintiffs seek injunctive relief and attorneys' fees and costs.

## VIOLATIONS OF STATE ANTITRUST AND RESTRAINT OF TRADE LAWS

42. Plaintiff Raccoon Valley Transport, Inc. incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

43. By reason of the foregoing, Defendants have violated Arizona Revised Statutes, §§ 44-1401, *et seq*.

44. By reason of the foregoing, Defendants have violated California Business and Professions Code, §§ 16700, *et seq*.

45. By reason of the foregoing, Defendants have violated District of Columbia Code Annotated §§ 28-4501, *et seq*.

46. By reason of the foregoing, Defendants have violated Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

47. By reason of the foregoing, Defendants have violated Iowa Code §§ 553.1, *et seq*.

48. By reason of the foregoing, Defendants have violated Kansas Statutes Annotated, §§ 50-101, *et seq*.

49. By reason of the foregoing, Defendants have violated the Maine Revised Statutes, 10 M.R.S. §§ 1101, *et seq*.

50. By reason of the foregoing, Defendants have violated Michigan Compiled Laws Annotated §§ 445.773, *et seq*.

51. By reason of the foregoing, Defendants have violated Minnesota Annotated Statutes §§ 325D.49, *et seq*.

52. By reason of the foregoing, Defendants have violated Mississippi Code Annotated §§ 75-21-1, *et seq*.

53. By reason of the foregoing, Defendants have violated Nebraska Revised Statutes §§ 59-801, *et seq*.

54. By reason of the foregoing, Defendants have violated Nevada Revised Statutes Annotated §§ 598A.010, *et seq*.

55. By reason of the foregoing, Defendants have violated New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

56. By reason of the foregoing, Defendants have violated North Carolina General Statutes §§ 75-1, *et seq.*

57. By reason of the foregoing, Defendants have violated North Dakota Century Code §§ 51-08.1-01, *et seq.*

58. By reason of the foregoing, Defendants have violated South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

59. By reason of the foregoing, Defendants have violated Tennessee Code Annotated §§ 47-25-101, *et seq.*

60. By reason of the foregoing, Defendants have violated Utah Code Annotated §§ 76-10-911, *et seq.*

61. By reason of the foregoing, Defendants have violated West Virginia Code §§ 47-18-1, *et seq.*

62. By reason of the foregoing, Defendants have violated Wisconsin Statutes §§ 133.01, *et seq.*

63. As a direct and proximate result of Defendants' unlawful conduct, class members in each of these states have been injured in their businesses and property in that they paid more for parking heaters than they would have paid absent Defendants' unlawful conduct.

64. During the Class Period, Plaintiff and the other members of the Indirect Purchaser Class purchased parking heaters by reason of the antitrust violations herein alleged, paid more for such products than they would have paid in the absence of such antitrust violations. As a

result, Plaintiff and the other members of the Class have sustained damages to their businesses and property in an amount to be determined at trial.

## X.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment on their behalf and on behalf of the Class herein, adjudging and decreeing that:

A.  This action may proceed as a class action, with Plaintiffs as the designated Class representatives (and where appropriate, subclass representatives) and their counsel as Class Counsel;

B.  Defendants have engaged in a contract, combination, and conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and that Plaintiffs and the members of the Class have been injured in their business and property as a result of Defendants' violations;

C.  Plaintiffs and the members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a judgment in favor of Plaintiffs and the Class be entered against the Defendants in an amount to be trebled to the extent such trebling is permitted pursuant to such laws;

D.  Defendants, their subsidiaries, affiliates, successors, transferees, assignees, and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy, or agreement alleged herein;

E.  Plaintiffs and members of the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

F.  Plaintiffs and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

G.      Plaintiffs and members of the Class receive such other and further relief as may be just and proper.

## XI.     JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

Dated:  March 14, 2015             By:  _____*/s/ Jason Zweig*_____

        Jason Zweig
        HAGENS BERMAN SOBOL SHAPIRO LLP
        555 Fifth Avenue, Suite 1700
        New York, NY 10017
        Telephone: 212-752-5455
        Facsimile: 917-210-3980
        jasonz@hbsslaw.com

        Steve W. Berman
        HAGENS BERMAN SOBOL SHAPIRO LLP
        1918 Eighth Avenue
        Suite 3300
        Seattle, Washington  98101
        Telephone:  206-623-7292
        Facsimile:  206-623-0594
        steve@hbsslaw.com

        Elizabeth A. Fegan
        HAGENS BERMAN SOBOL SHAPIRO LLP
        1144 West Lake Street
        Suite 400
        Oak Park, Illinois  60301
        Telephone:  708-628-4949
        Facsimile:  708-628-4950
        beth@hbsslaw.com

J. Barton Goplerud
HUDSON MALLANEY SHINDLER &
ANDERSON PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: 515-223-4567
jbgoplerud@hudsonlaw.net

David Freydin
Timothy A. Scott
LAW OFFICES OF DAVID FREYDIN LTD.
8707 Skokie Blvd
Skokie, IL 60077-2269
Telephone: 630-455-0000

- 15 -