UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RACCOON VALLEY TRANSPORT, INC. and AUDRIUS LABACIAUSKAS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>  v.<br><br>ESPAR INC. and JOHN DOES 1-100,<br><br>                             Defendants. | No. 1:15-cv-01338-JG-JO<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO APPOINT STEVE BERMAN OF HAGENS BERMAN SOBOL SHAPIRO LLP AS INTERIM LEAD CLASS COUNSEL FOR INDIRECT PURCHASER PLAINTIFFS** |

010505-11 772623 V1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. MULTIPLE OVERLAPPING CLASS ACTIONS EXIST .............................................. 2

III. STEVE BERMAN OF HAGENS BERMAN SOBOL SHAPIRO LLP
SHOULD BE APPOINTED AS INTERIM LEAD CLASS COUNSEL
FOR INDIRECT PURCHASERS ..................................................................................... 4

    A. Hagens Berman Readily Meets All of the Grounds Courts
Consider When Making Interim Counsel Appointments ....................................... 5

        1. Hagens Berman's work identifying or investigating
potential claims resulted in the first filed action. .................................... 5

        2. Steve Berman and Hagens Berman have extensive
experience handling complex class actions, and specific
knowledge and experience directing antitrust class actions. .................... 6

        3. Hagens Berman will commit all necessary resources in
aggressively pursuing the case on behalf of Plaintiffs and
all putative class members. ....................................................................... 9

    B. Hagens Berman Recommends Several Early Litigation
Management Techniques That Can Be Used Here ................................................ 9

        a. Scheduling proposals. ............................................................... 9

        b. Discovery management proposals. .......................................... 11

            (1) Early production of documents produced to
the U.S. Department of Justice
("Government Investigation Production"). ................ 11

            (2) Discovery plan. ......................................................... 13

            (3) Protocol for the production of electronically-
stored information. .................................................... 13

            (4) Proposed protective order. ........................................ 14

IV. CONCLUSION ............................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Covad Communs. Co. v. Revonet, Inc.*,
 254 F.R.D. 147 (D.D.C. 2008) ................................................................................................14

*Delre v. Perry*,
 288 F.R.D. 241 (E.D.N.Y. 2012) ...............................................................................................4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
 No. 11-md-2262, 2014 U.S. Dist. LEXIS 153634 (S.D.N.Y. Oct. 14, 2014) ...........................4

*Osborne v. C.H. Robinson Co.*,
 No. 08-cv-50165, 2011 U.S. Dist. LEXIS 123168 (N.D. Ill. Oct. 25, 2011) ..........................14

*In re Stericycle, Inc.*,
 MDL No. 2455, No. 2013 U.S. Dist. LEXIS 147718 (N.D. Ill. Oct. 11, 2013) ........................8

*Sullivan v. Barclays PLC*,
 No. 13-cv-2811, 2013 U.S. Dist. LEXIS 83886 (S.D.N.Y. June 10, 2013) ..............................4

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*
 *Sales Practices & Prods. Liab. Litig.*,
 No. 10-ml-2151, 2010 U.S. Dist. LEXIS 62393 (C.D. Cal. June 1, 2010) ................7, 8, 11, 12

### OTHER AUTHORITIES

Fed. R. Civ. P. 23(g) ...............................................................................................................*Passim*

Plaintiffs Raccoon Valley Transport, Inc. and Audrius Labaciauskas respectfully move the Court to appoint Steve Berman of Hagens Berman Sobol Shapiro LLP as Lead Class Counsel for indirect purchaser plaintiffs.

## I. INTRODUCTION

To avoid unnecessary and costly duplication, and to efficiently manage this case before class certification, Plaintiffs respectfully request that the Court appoint Steve Berman of Hagens Berman Sobol Shapiro LLP as interim lead counsel for indirect purchasers.

Mr. Berman and Hagens Berman satisfy and exceed all of the criteria courts consider in making an interim lead counsel appointment under Rule 23(g) of the Federal Rules of Civil Procedure. First, Hagens Berman filed the first antitrust case on behalf of indirect purchasers of Defendant's parking heaters on March 16, 2015, with the follow-on case not filed until more than two weeks later.

Second, Mr. Berman has led Hagens Berman to be repeatedly named one of the top ten plaintiffs' firms in the country, successfully litigating antitrust and other complex class actions, which have resulted in substantial recoveries for the represented classes. Mr. Berman and the firm have been appointed as lead or co-lead counsel in some of the largest antitrust class actions in history. As one example, in a case litigated in this district before this Court, Hagens Berman was co-lead counsel in what resulted in the largest settlement in the history of the antitrust laws at the time.[1]

---

[1] *See In re Visa Check/MasterCard Antitrust Litig.*, No. 96-cv-5238 (E.D.N.Y.) (settlement of over $3 billion). Hagens Berman's experience in this District has benefitted consumers nationwide. *See also In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023 (E.D.N.Y.) (nationwide settlement on behalf of consumers in an MDL proceeding).

010505-11 772623 V1

Third, Hagens Berman has extensive knowledge of applicable antitrust law and procedural mechanisms to ensure the efficient prosecution of the case. Appointment of Hagens Berman will serve to expedite the litigation in important areas of the case, such as scheduling and discovery management (*e.g.*, early production of government documents, electronically stored information protocols, and confidentiality orders), as further described below.

Finally, Hagens Berman is committed to representing the class of indirect purchasers, and is ready and willing to commit the necessary resources, including the hundreds of thousands of dollars that will likely be expended for expert fees. To that end, Hagens Berman has already retained consulting experts to aid in, *inter alia*, an analysis of the market, its concentration, and effects of the pricing conspiracy. Given Mr. Berman's and Hagens Berman's proven track record of innovative and demonstrated leadership in some of the largest antitrust cases in the United States, this Court should appoint Mr. Berman as interim lead counsel.

## II. MULTIPLE OVERLAPPING CLASS ACTIONS EXIST

This case involves automotive parking heaters, i.e., devices that heat the interior compartment of a motor vehicle independent of the operation of the vehicle's engine.[2] Parking heaters are used in a wide variety of commercial vehicles.[3] On March 12, 2015, Defendant Espar pled guilty to participating in a price fixing conspiracy "in the sale of parking heaters for commercial vehicles in the aftermarket…sold to aftermarket customers in the United States and elsewhere in North America, from at least as early as October 1, 2007, through at least December 31, 2012, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."[4]

---

[2] Plaintiffs' Class Action Compl. ("Compl."), ¶ 11.

[3] *Id*.

[4] *Id*. ¶ 14 (quoting Plea Agreement, ¶ 2, *United States of America v. Espar Inc.*, No. 15-cr-0028 (E.D.N.Y. Mar. 12, 2015)).

On March 16, 2015, Plaintiffs filed the first private antitrust enforcement case against Espar.  Plaintiffs seek to represent the following nationwide class for the purposes of seeking injunctive relief under Section 1 of the Sherman Act:

> All persons in the United States who purchased parking heaters for commercial vehicles in the aftermarket in the United States between October 1, 2007 and the present.[5]

Plaintiff Raccoon Valley Transport also seeks to represent members of the following indirect purchaser state class for the purpose of seeking damages under state antitrust and restraint of trade laws:

> All persons who purchased parking heaters for commercial vehicles in the aftermarket in Arizona, California, the District of Columbia, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Utah, Wisconsin, West Virginia, between October 1, 2007 and the present.[6]

Over two weeks after Plaintiffs filed their case, on April 2, 2015, Regional International Corp. filed a duplicative case against Espar.[7]  In filing its case, Regional International specifically identified Plaintiffs' action as a related case, flagged by Regional International as involving similar facts and legal issues.[8]  Indeed, like Plaintiffs' case, the *Regional Int'l* case (1) arises out of the same price fixing conspiracy;[9] (2) contains practically identical nationwide class action allegations as well as individual state classes under the laws of certain states;[10]

---

[5] Compl., ¶ 24.  Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.  *Id*.

[6] Compl., ¶ 25.

[7] *See generally* Case No. 1:15-cv-1798.

[8] *See* Dkt. No. 1-1 at 3 (filed in 1:15-cv-1798).

[9] *Regional Int'l*, Compl, ¶¶ 2-5, 40-43, 59-68.

[10] *Id*. ¶¶ 15-18.

(3) similarly alleges claims under Section 1 of the Sherman Act as well as violations of state antitrust and restraint of trade laws;[11] and (4) seeks damages and injunctive relief.[12] As a result, Plaintiffs sought to have *Regional Int'l* transferred to this Court, which was granted on April 9, 2015.

### III. STEVE BERMAN OF HAGENS BERMAN SOBOL SHAPIRO LLP SHOULD BE APPOINTED AS INTERIM LEAD CLASS COUNSEL FOR INDIRECT PURCHASERS

Under Rule 23(g), this Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."[13] As courts in this District and Circuit recognize, "[t]he designation of interim class counsel is especially encouraged in cases where there are multiple, overlapping class actions that require extensive pretrial coordination."[14] "In this regard, '[t]he appointment of interim class counsel may be helpful in clarifying responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.'"[15] Given the existence of overlapping class actions, appointment of interim lead counsel is appropriate. Moreover, ensuring that the

---

[11] *Id.* ¶¶ 81-93, 94-119. Regional International also asserts violations of state consumer protection and unfair competition laws. *Id.* ¶¶ 120-133.

[12] *Id.* at ¶¶ 34-35.

[13] Fed. R. Civ. P. 23(g)(3).

[14] *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262, 2014 U.S. Dist. LEXIS 153634, at *71 (S.D.N.Y. Oct. 14, 2014) (citing *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006)).

[15] *Delre v. Perry*, 288 F.R.D. 241, 247 (E.D.N.Y. 2012) (quoting *In re Facebook, Inc.*, MDL No. 12-2389, 288 F.R.D. 26 (S.D.N.Y. Dec. 6, 2012)). *Cf. Sullivan v. Barclays PLC*, No. 13-cv-2811, 2013 U.S. LEXIS 83886, at *4 (S.D.N.Y. June 10, 2013) (denying motion to appoint lead counsel where "[t]here currently appear to be no overlapping, duplicative or competing suits that might be consolidated with this action" nor were there "competing counsel whose roles might complicate the efficient management of this case or result in duplicative attorney work").

indirect purchaser class is represented, separately from the government criminal matter and the direct purchaser case, is important.

### A. Hagens Berman Readily Meets All of the Grounds Courts Consider When Making Interim Counsel Appointments

After determining that appointment of interim counsel is appropriate, courts next turn to the text of Rule 23(g) for the interim counsel selection requirements. Rule 23(g) requires that this Court consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."[16] In addition, this Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."[17]

Because Hagens Berman easily satisfies all grounds courts consider in making interim counsel appointments, Plaintiffs respectfully request that Mr. Berman be appointed interim lead counsel for indirect purchasers.

#### 1. Hagens Berman's work identifying or investigating potential claims resulted in the first filed action.

To start, Hagens Berman meets Rule 23(g)(1)(A)(i), which looks to the work done by counsel in identifying or investigating potential claims in the action.[18] Here, Hagens Berman researched, drafted and filed the first case alleging antitrust violations against Espar on behalf of any purchaser, direct or indirect. Since filing their Complaint, Hagens Berman's administrative efforts have included: (1) serving defendant, (2) working to promote judicial efficiency by

---

[16] Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

[17] Fed. R. Civ. P. 23(g)(1)(B).

[18] Fed. R. Civ. P. 23(g)(1)(A)(i).

transferring Plaintiffs' action to the Court from Judge Block, (3) working to reassign the *Regional Int'l* case from Judge Townes to this Court, and (4) preparing proposed case schedule and discovery orders (further detailed below).

Further, Hagens Berman has retained a consulting expert to analyze the relevant market, market concentration and related effects of the price-fixing conspiracy. As a result, Hagens Berman's work here demonstrates the satisfaction of this factor.

**2. Steve Berman and Hagens Berman have extensive experience handling complex class actions, and have specific knowledge and experience directing antitrust class actions.**

Next, Hagens Berman also meets the Rule 23(g)(1)(A)(ii) and (iii) requirements, which evaluate counsel's experience as well as the knowledge of the applicable law raised in an action.[19] As evidenced by the firm's resume, Hagens Berman is one of the nation's top class action firms, with particular experience and prominent recoveries in antitrust litigation.[20]

Since its founding by Steve Berman in 1993, Hagens Berman has represented plaintiffs in a broad spectrum of complex, multi-party cases. Mr. Berman and the firm have aggressively prosecuted complex class action cases, have extensive trial experience, and have held leadership roles in hundreds of complex civil class actions. Mr. Berman's particular skill in leading complex cases has recently resulted in *sua sponte* leadership appointments by multiple courts presiding over large cases. Most recently, the Hon. Jesse Furman, presiding over the *In re General Motors LLC Ignition Switch Litig.* MDL in the Southern District of New York,[21] *sua*

---

[19] Fed. R. Civ. P. 23(g)(1)(A)(ii), (iii).

[20] *See* Hagens Berman Sobol Shapiro LLP's Firm Resume (attached as Exhibit 1 to the Declaration of Steve W. Berman in Support of Plaintiffs' Motion and Memorandum of Law to Appoint Steve Berman of Hagens Berman Sobol Shapiro LLP as Interim Lead Class Counsel for Indirect Purchaser Plaintiffs ("Berman Decl.").

[21] No. 14-MD-2543 (S.D.N.Y.).

- 6 -

Case 1:15-cv-01338-JG-JO Document 17-1 Filed 04/15/15 Page 10 of 19 PageID #: 72

*sponte* appointed Steve Berman as temporary lead counsel on June 24, 2014. Judge Furman then reappointed Mr. Berman to serve as co-lead counsel for economic loss cases on August 15, 2014, after receiving written applications from dozens of lawyers and hearing individual presentations by 40 lawyers. Similarly, in *In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig*. in the Central District of California,[22] Judge James V. Selna *sua sponte* identified and appointed Mr. Berman as a presumptive co-lead counsel upon transfer of the MDL.

Specific to the firm's antirust experience, Mr. Berman and Hagens Berman have led many notable antirust cases with significant recoveries, including the following:

> *In re Visa Check/MasterCard Antitrust Litigation*
> Case No. 96-cv-5238 (E.D.N.Y.)
>
> Description: Hagens Berman served as co-lead counsel, the case settled for over $3 billion in cash and over $20 billion in injunctive relief, making it the largest antitrust settlement in history at the time.
>
> *In re Electronic Books Antitrust Litigation*
> Case No. 11-md-2293 (S.D.N.Y.)
>
> Description: Hagens Berman is serving as co-interim class counsel. Pending the Second Circuit's decision, Apple will pay consumers $400 million for its involvement in an alleged price-fixing scheme with e-book publishers, if Apple's appeal of a 2013 bench ruling that found Apple guilty of federal antitrust laws is dismissed. This settlement combined with the additional settlements from publishing companies will total a $560 million settlement – twice the amount of damages suffered by the class.
>
> *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*
> Case No. 02-cv-1486 (N.D. Cal.)
>
> Description: Working as co-lead counsel for direct purchasers, the litigation resulted in over $325 million in settlement funds.

---

[22] No. 10-ml-2151 (C.D. Cal.).

010505-11 772623 V1

> *In re TFT-LCD Antitrust Litigation*
> Case No. M 07-1827 (N.D. Cal.)
>
> Description:  Serving as one of eight "Tier 1" firms representing direct purchasers, the *TFT-LCD* litigation settled for over $500 million.
>
> *Pecover v. Electronic Arts, Inc*.
> Case No. 08-cv-2820 (N.D. Cal.)
>
> Description:  Appointed co-lead counsel for indirect purchasers, Hagens Berman achieved class certification of a nationwide class and settled the case for $27 million.

In addition to the firm's remarkable work in antitrust litigation, the firm's track record reflects other significant results.[23]  These include a $1.6 billion settlement in the *In re Toyota Motor Corp. Unintended Acceleration* MDL, a $350 million settlement in the *First DataBank* litigation and the largest settlement in history in the *Tobacco Litigation*.

The firm's abilities and results have not gone unnoticed.  In March 2015, the firm was named to the National Law Journal's prestigious "Plaintiffs' Hot List" for the eighth year.  The award is given each year to law firms that do "exemplary, cutting-edge work on the plaintiffs' side" and who have demonstrated "an impressive track record of wins."  Hagens Berman was first named to the list in 2006, and has been named a total of eight years.  It is one of the few firms nationally to have taken the honor eight times, five of which were consecutive.

---

[23] As Judge Milton Shadur of the Northern District of Illinois noted when comparing applications from multiple well-qualified leadership applicants in the *In re Stericycle, Inc., Sterisafe Contract Litig.* MDL:  "But it must be said that the track record of Hagens Berman and its lead partner Steve Berman is even more impressive, having racked up such accomplishments as a $1.6 billion settlement in the *Toyota Unintended Acceleration Litigation* and a substantial number of really outstanding big-ticket results."  *In re Stericycle, Inc*., MDL No. 2455, No. 13-cv-5795, 2013 U.S. Dist. LEXIS 147718, at *6-7 (N.D. Ill. Oct. 11, 2013).  Judge Shadur added: "It may be worth mentioning that to this Court's recollection it has had no first-hand judicial experience with either of the two finalist firms – and it has been on the bench far too long to have had litigation contact with either or their respective lead partners while it was in the active practice of law.  But that is not true of its colleagues in this District of more recent vintage, an email inquiry to whom brought in return some high praise of attorney Berman's skills."  *Id*.

Mr. Berman and Hagens Berman clearly possess the experience and knowledge of applicable laws raised in this case.

### 3. Hagens Berman will commit all necessary resources in aggressively pursuing the case on behalf of Plaintiffs and all putative class members.

The final factor involves the resources that counsel will commit to representing the class.[24] Hagens Berman has the resources necessary to prosecute this case and will devote those resources to prosecuting this case to the best interests of the class. With 63 lawyers and nine offices, including an office in New York, the firm has a nationwide reach.

Based on the firm's experience litigating class actions generally, and antitrust class actions specifically, Hagens Berman fully understands the substantial investment of time and resources necessary to properly pursue and lead such litigations and are committed to devoting the necessary resources to this case. Hagens Berman will devote the resources necessary to aggressively prepare this case for trial. To do so, the firm will rely on several of its most experienced antitrust litigators and trial lawyers. Hagens Berman's deep antitrust experience demonstrates the firm's unyielding commitment to representing the proposed class.

### B. Hagens Berman Recommends Several Early Litigation Management Techniques That Can Be Used Here

In furtherance of Hagens Berman's ability to lead this case and expedite the litigation, Hagens Berman makes a variety of proposals outlined below, including proposals for scheduling and discovery-related items.

#### a. Scheduling proposals.

First, subject to the requirement to meet and confer with defense counsel once interim lead counsel is appointed, Plaintiffs will propose the following schedule:

---

[24] Fed. R. Civ. P. 23(g)(1)(A)(iv).

- 9 -

| Phase | Description | Timing |
|---|---|---|
| ***Initial Discovery Period: Production of Government Investigation Documents*** | Defendant to produce Government Investigation Documents (defined below) | 30 days following appointment of interim lead counsel for indirect purchasers |
| | The parties are to confer during this period and present to the Court for approval: (i) a protective order; (ii) a protocol for the production of electronically-stored information; and (iii) a proposed discovery plan | 30 days following appointment of interim lead counsel for indirect purchasers |
| ***Initial Pleadings*** | Plaintiffs to file consolidated amended complaint | 60 days following appointment of interim lead counsel for indirect purchasers |
| | Defendant to answer or otherwise plead | 45 days following filing of amended complaint |
| | Plaintiffs to respond to any motions to dismiss | 45 days following filing of motion to dismiss (if applicable) |
| | Defendant to file reply in support of motion to dismiss | 21 days following filing of response to motion to dismiss (if applicable) |
| ***Discovery*** | Discovery begins pursuant to a Court-approved discovery plan | At such time as agreed to by the parties or on a schedule set by the Court |
| | Discovery closes pursuant to Court-approved discovery plan | Nine months after discovery commences |
| ***Plaintiffs' Motion For Class Certification*** | Plaintiffs' motion for class certification, together with any expert reports | 30 days following the close of discovery |
| | Defendant to take the depositions of Plaintiffs' experts | 45 days following the filing of Plaintiffs' motion for class certification |
| | Defendant to file response in opposition to Plaintiffs' motion for class certification, together with any expert reports | 60 days following the filing of Plaintiffs' motion for class certification |
| | Plaintiffs to take the depositions of Defendant's expert(s), if any | 45 days following the filing of Defendant's response in opposition to Plaintiffs' motion for class certification |

010505-11  772623 V1

| Phase | Description | Timing |
|---|---|---|
| | Plaintiffs to file their reply in support of Plaintiffs' motion for class certification, together with any expert rebuttal report(s) | 60 days following the filing of Defendant's response in opposition to Plaintiffs' motion for class certification |
| | Defendant to take the depositions of any rebuttal expert(s) | 14 days following the filing of Plaintiffs' reply |
| *Remaining Schedule* | The parties to confer on and present a schedule to the Court with respect to any remaining discovery to be conducted in light of the Court's decision on class certification, as well as the schedule for dispositive motions, and Rule 26(a)(2) expert discovery | 30 days following the Court's ruling on Plaintiffs' motion for class certification |

b. **Discovery management proposals.**

In addition to proposing a schedule, Plaintiffs make the following proposals concerning the early production of culled documents and discovery planning, including a proposed electronically-stored information production protocol and a protective order:

**(1) Early production of documents produced to the U.S. Department of Justice ("Government Investigation Production").**

Espar has likely already produced a set of documents to the United States Department of Justice in connection with the *United States v. Espar Inc.* matter ("Government Investigation Production"). Early production of Espar's Government Investigation Production is a way to expedite discovery in complex litigation, reduce burden, and lower the costs of litigation. For these reasons, courts commonly enter early case management orders requiring the production of government investigation productions before the filing of an amended complaint. For example, in the *In re Toyota Motor Corp. Unintended Acceleration* MDL, Judge Selna ordered that the government investigation productions be produced 30 days before the due date for the consolidated amended complaint, stating:

- 11 -

010505-11 772623 V1

> [T]he Court is convinced that defendants have within their possession a defined set of documents, consisting of approximately 75,000 to 100,000 pages, much or all of which is likely to be discoverable, and which has already been produced to Government entities to date, including without limitation to the United States Congress and National Highway Traffic Safety Administration. Those documents which are discoverable under Federal Rules of Civil Procedure shall be produced no later than July 2, 2010.[25]

Similarly, in *In re Pharm. Indus. Average Wholesale Price Litig.*,[26] Judge Saris ordered that the multiple pharmaceutical manufacturer defendants produce their respective government investigation productions, stating:

> A copy of the set or sets of documents, if any, previously produced by a defendant to any federal or state executive or legislative agency or entity in connection with any investigation into, in whole or in part, the use of the average wholesale price ("AWP") in the pricing or reimbursement of a drug manufactured by that defendant during the Class Period.[27]

That same procedure would be equally applicable here, because it promotes efficiency and minimizes costs. Here, documents are likely to exist given the guilty plea[28] and no burden exists on Espar to produce such documents, which have been searched, gathered, reviewed (for responsiveness and privilege), and organized for production to the government.

---

[25] *In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig.*, No. 10-ml-2151, 2010 U.S. Dist. LEXIS 62393, at *63 (C.D. Cal. June 1, 2010).

[26] MDL No. 1456, No. 01-12257 (D. Mass.).

[27] Berman Decl., Ex. 2. *See also* Berman Decl., Ex. 3 (*Government Emps. Hosp. Ass'n, et al. v. Serono Labs, Inc.*, No. 05-11935 (D. Mass.) (Order on Plaintiffs' Motion To Enforce Court Order, ordering defendants to "produce all non-work product, non-privileged documents previously produced to the Government in any federal or state criminal investigation, grand jury investigation, or false claims act investigation concerning the development, manufacture, marketing, pricing, or sale of the drug Serostim.").

[28] Per Espar's plea agreement, it is obligated to "produc[e] to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine (and with translations into English when requested by the United States), in the possession, custody or control of the defendant or any of its related entities, that are requested by the United States in connection with any Federal Proceeding." *See* Plea Agreement, ¶ 13(a). *See also id.* at ¶ 14(a), (d).

### (2) Discovery plan.

In addition, there are various methods for managing discovery prior to Plaintiffs' motion for class certification that permit Plaintiffs access to relevant information, while balancing a defendant's desire to reduce burden and expense. Examples follow, which would be the subject of the meet and confer with Defendant within 30 days following appointment of interim lead counsel for indirect purchasers:

- *Production of relevant transactional data*: The production of transactional data is relevant to the analysis of antitrust impact and the demonstration that class-wide damages can be calculated for purposes of Plaintiffs' motion for class certification. For this reason, the transactional data must be prioritized.

- *Prioritized custodian files*: Prior to class certification, Plaintiffs propose to conduct targeted discovery that requires the parties to share information, whether through truncated written discovery (*e.g.*, organizational charts together with voluntary information) or depositions pursuant to Fed. R. Civ. P. 30(b)(6), which permits Plaintiffs to identify the key custodians. Plaintiffs would then identify centrally-located files and a reasonable set of custodian files to be searched and produced as a first wave, subject to supplementation at an appropriate time.[29]

- *Disclosure and vetting of search terms/seed sets*: Hagens Berman proposes that if any party intends to use search terms, it will produce to the other party a list of the proposed search terms and a means for testing the adequacy of any such terms. Similarly, if any party utilizes predictive coding to help formulate searches, it will produce to the other party the "seed set documents" used to train the predictive coding system.

### (3) Protocol for the production of electronically-stored information.

As Espar undoubtedly stores information and communications electronically, Plaintiffs propose a protocol for the production of electronically-stored information[30] that requires the native production of documents for several reasons.

---

[29] A similar procedure was used in *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-2143 (N.D. Cal.). *See* Berman Decl., Ex. 4 (Order Regarding Discovery Matters dated Dec. 14, 2012).

[30] *See* Berman Decl., Ex. 5.

First, a native production ensures that the documents will be produced as they are created in the ordinary course of business, preserving a reviewing party's ability to search documents that have not been destroyed or degraded. Native productions ensure that metadata productions are complete and searchable, enabling efficient management and review of documents.[31]

A native production is also less burdensome, lowering Plaintiffs' document review costs and significantly increasing their ability to organize and search for documents. And, native file productions have lower administrative costs as they do not require the same file processing time and vendor costs associated with alternative production formats such as PDF or Tagged Image File Format ("TIFF").[32] Moreover, if documents are converted from native to other production formats, important information can be lost, such as embedded mathematical formulae in Excel spreadsheets, tracked changes in Word documents and color in PowerPoint presentations.

**(4) Proposed protective order.**

Given the nature of antitrust claims, which involve issues of competition and product pricing, Plaintiffs anticipate the need for a protective order to facilitate production of documents. To that end, Plaintiffs propose a protective order, which is based on a protective order previously approved in another antitrust action overseen by the Court.[33/34]

---

[31] *See*, *e.g.*, *Osborne v. C.H. Robinson Co.*, No. 08-cv-50165, 2011 U.S. Dist. LEXIS 123168, at *19 (N.D. Ill. Oct. 25, 2011) ("PDF and TIFF files have a static format that can be advantageous, but they can also be time consuming to create and lose searchable text and metadata that might enable the parties to more efficiently digest the information.") (citation omitted).

[32] *See*, *e.g.*, *Covad Communs. Co. v. Revonet, Inc.*, 254 F.R.D. 147, 150 (D.D.C. 2008) ("I will assume that the e-mails at issue exist in what I have called their native format and can be copied onto a CD with a couple of keystrokes. Obviously, printing them or converting them to TIFF files probably (and ironically) costs more so Revonet is hard pressed to claim that producing them now in their native format is unfairly burdensome.").

[33] Berman Decl., Ex. 6.

010505-11 772623 V1

## IV. CONCLUSION

Accordingly, for the reasons provided above and for good cause shown, Plaintiffs respectfully request that the Court appoint Steve Berman and Hagens Berman as interim lead counsel for indirect purchasers.

Dated April 15, 2015                                  Respectfully submitted,

By:       /s/ Steve W. Berman
    Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: 206-623-7292
Facsimile: 206-623-0594
steve@hbsslaw.com

Elizabeth A. Fegan (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 West Lake Street, Suite 400
Oak Park, Illinois 60301
Telephone: 708-628-4949
Facsimile: 708-628-4950
beth@hbsslaw.com

Jason Zweig
HAGENS BERMAN SOBOL SHAPIRO LLP
555 Fifth Avenue, Suite 1700
New York, NY 10017
Telephone: 212-752-5455
Facsimile: 917-210-3980
jasonz@hbsslaw.com

---

[34] *See generally In re Air Cargo Shipping Servs. Antitrust Litig.,* 06-MD-1775-JG-VVP (Dkt. # 552, 599).

J. Barton Goplerud
HUDSON MALLANEY SHINDLER &
ANDERSON PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: 515-223-4567
jbgoplerud@hudsonlaw.net

David Freydin
Timothy A. Scott
LAW OFFICES OF DAVID FREYDIN LTD.
8707 Skokie Blvd
Skokie, IL 60077-2269
Telephone: 630-455-0000

*Counsel for Plaintiffs*

- 16 -