```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE PARKING HEATERS,                                          REPORT AND
ANTITRUST LITIGATION                                            RECOMMENDATION

This Document Relates To: ALL ACTIONS                           15-MC-0940 (DLI) (JO)
-----------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

In these consolidated class actions, putative classes of direct and indirect purchasers of commercial truck parking heaters (the Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs"), respectively) have accused the defendant vendors of those devices of violating various antitrust laws. The parties now jointly seek approval of their respective class settlement agreements and entry of the consent judgments to which they have stipulated. *See* Docket Entry ("DE") 158 (IPP motion);[1] DE 159 (DPP motion).[2] Counsel for both putative classes also seek an award of attorneys' fees. *See* DE 155 (DPP motion); DE 156 (IPP motion). For the reasons set forth below, I respectfully recommend that the court certify the proposed settlement classes, approve the settlements, and grant the motions for attorneys' fees and costs.

I.   Background

As set forth in their respective complaints, both the DPPs and the IPPs asserted class action claims accusing several defendants of participating in a conspiracy to suppress and eliminate competition in the sale of parking heaters for commercial vehicles in the aftermarket in violation of

---

[1] DE 158 includes both a notice of motion and a supporting memorandum (the "IPP Memo.").

[2] The DPP Amended Consolidated Complaint superseded the complaints in the following individual cases: *Triple Cities Acquisition LLC v. Espar Inc., et al.*, 15-cv-01343 (DLI) (JO); *National Trucking Financial Reclamation Services v. Espar Inc., et al.*, 15-CV-02310 (DLI) (JO); *Trailer Craft Inc. v. Espar Inc., et al.*, 15-CV-02411 (DLI) (JO); *Guay Brothers Company, Inc. v. Espar, Inc., et al.*, 15-CV-03225 (DLI) (JO); *Myers Equipment Corporation v. Espar Inc., et al.*, 15-CV-03872 (DLI) (JO); and *Advance Diesel Service v. Espar, Inc., et al.*, 15-CV-04350 (DLI). Although the plaintiffs in the *Guay Brothers* and *Advance Diesel Service* actions are not named plaintiffs in the DPP Amended Consolidated Complaint, the proposed settlements will resolve those actions as well as all other DPP cases. *See* DE 163 at 1-2.

the Sherman Antitrust Act. The IPPs separately asserted that the defendants violated various state statutes. *See* 15 U.S.C. § 1 (Sherman Antitrust Act); DE 82 (DPP Consolidated Amended Complaint) at 30; DE 84 at 27-33 (IPP Consolidated Amended Complaint). The defendants in the various actions include Espar Inc. ("Espar"), two of its executives, and its related companies; Webasto Products North America, Inc. ("Webasto"), along with its related companies; and other unidentified co-conspirators.[3] The defendants denied the DPPs' allegations, asserted that the DPPs did not suffer any cognizable injury from the violation of the Sherman Act, argued that the IPP class cannot collect damages from violations of federal antitrust laws, and challenged the jurisdictional basis for the IPPs' state law claims. *See* DE 94 (Espar's motion to dismiss); DE 94-1 (supporting memorandum) at 1-3; DE 95 (Webasto's Answer to DPP Complaint). The parties later agreed to settle their disputes and now ask the court to enter judgment in a form of proposed orders. *See* DE 163-2 (DPP proposal); DE 164-2 (IPP proposal). No one has opted out of either proposed settlement or objected to the settlement or fee proposals. *See* IPP Memo. at 1, 4-5; DE 159-1 ("DPP Memo.") at 1-2. Following a fairness hearing on January 9, 2019, at my invitation, the plaintiffs submitted supplemental letters supporting approval. *See* DE 162 (minute entry); DE 165 (hearing transcript) ("Tr.") at 10, 21-22, 25-26; DE 163 ("DPP Letter"); DE 164 ("IPP Letter").

The DPPs settled separately with each group of defendants (Espar and its related individuals and companies in one group; Webasto and its related companies in the other). The terms of the Webasto settlement provide a fund of $7 million, which constitutes ten percent of the sales to class members during the relevant period. *See* DPP Memo. at 5-6; DE 146-2, pp. 4-42 ("DPP Webasto Agreement") ¶ 25.  If any class members had opted out of the settlement, Webasto's payment

---

[3] The Complaint in the *Advance Diesel Service* action also named Proheat Mechanical Systems Inc., Proheat Canada, and Marine Canada Acquisition Inc. as defendants. *See* 15-CV-04350 DE 1 (Complaint) ¶¶ 14-16. The DPP Amended Consolidated Complaint omitted those defendants.

2

obligations would have been reduced up to a maximum of 35 percent ($2,450,000.00); however, no class member opted out and Webasto's total payment obligation remains $7 million. *See* DPP Memo. at 6 n.6; DPP Webasto Agreement ¶ 33.

Espar agreed to deposit $8 million into a fund initially, which amount was eventually reduced in an amount corresponding to each privately settling potential class member's purchase volume relative to the settlement class's U.S. purchases up to $2.8 million. *See* DPP Memo. at 6. Therefore, Espar ultimately paid $5.2 million to the settlement class. Potential members who privately settled are still eligible to receive payment from the settlement fund if the amount received in private settlement is less than what they would receive from the settlement fund. *Id.* at 7; DE 146-2 (pp. 44-87) ("DPP Espar Agreement") ¶¶ 27, 32-37.

The IPPs likewise settled with all the defendants. The settlement terms provide that the defendants pay a total of $7.7 million into a fund from which certain indirect purchasers may file a claim to receive a cash payment. IPP Memo. at 1; DE 147-2 (pp. 6-34) ("IPP Espar Agreement") ¶ 24; DE 147-2 (pp. 49-76) ("IPP Webasto Agreement") ¶ 24.

II. <u>Discussion</u>

Settlement of a class action requires court approval. *See* Fed. R. Civ. P. 23(e). Judicial policy favors the settlement and compromise of class actions, provided that the court can properly certify a class under Rule 23. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *Berni v. Barilla G. e R. Fratelli, S.p.A.*, 2019 WL 2341991, at *3 (E.D.N.Y. Jan. 3, 2019) (citing *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012)).

A. <u>Class Certification</u>

A court considering class certification may take account of the special circumstances of a request for settlement-only class certification and need not inquire into certain problems that would arise only if the case were to proceed to trial, such as the difficulty of trial management. *Amchem*

3

*Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). I have no doubt that class certification is proper. The DPP class and the IPP class meet the Rule 23(a) standards of numerosity making joinder impractical. There is a central common issue as to the existence of price-fixing agreements among the defendants, and the named plaintiffs all have claims that are typical of the classes they represent. In addition, the attorneys serving as class counsel for each group of plaintiffs are highly skilled and experienced and can fairly and adequately represent the classes' respective interests. *See* Fed. R. Civ. P. 23(a).[4]

Class treatment also is appropriate under Rule 23(b)(3). Common issues predominate over any issues affecting only individual members, and a class action is superior to hundreds of individual direct purchaser actions and tens of thousands of individual indirect purchaser actions. *Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

B.  Fairness

Before approving a class-wide settlement, the court must also be satisfied that the proposed agreement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). Where, as here, the parties have negotiated a settlement before asking the court to certify a class, their proposal "is subject to a higher degree of scrutiny than is usual in assessing a settlement's fairness." *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied*, 464 U.S. 818

---

[4] To avoid any appearance of a potential conflict of interest, the IPPs designated an attorney to solely represent the interest of the resellers before a mediator who heard evidence and mediated the division of the award between indirect purchaser resellers and end-user indirect purchaser groups. *See* IPP Memo. at 15-16; Tr. at 22. Accordingly, there is no basis for concern about conflicts of interest, potential unfairness to absent class members, or abuse of class action procedures by overbroad class determinations. *See Amchem*, 521 U.S. at 619-21, 624-28.

(1983)). The fairness assessment requires an evaluation of both process and substance. *See Wal-Mart Stores, Inc.*, 396 F.3d at 116.

      1.    <u>Process</u>

In the procedural fairness inquiry, a court must analyze the negotiation process "in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 221 (E.D.N.Y. 2013), *rev'd and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) (internal quotation marks and citations omitted). A presumption of procedural fairness exists "where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (internal quotation marks and citation omitted).

The DPPs report that the "settlement negotiations were meaningful and informed as Class Counsel took many steps to ensure that they had all the necessary information to advocate for a fair settlement" and "[b]y the time the settlements were executed, Class Counsel had developed a complete understanding of the facts through discovery and had analyzed and evaluated all of the contested legal and factual issues posed[.]" DPP Memo. at 9. They further report that each of the settlements resulted from negotiations before an independent mediator. *Id.* at 4.[5]

The IPPs report that class counsel negotiated the settlement with the defendants following an investigation, conducted formal and informal discovery resulting in over 170,000 documents, consulted with an economic expert, and engaged an independent mediator. *See* IPP Memo. at 6-7. These assertions, and the absence of evidence of improper conduct, support the conclusion that the process of reaching these settlements was procedurally fair and that the "plaintiffs' counsel have

---

[5] I gratefully acknowledge the work of the Honorable Vaughn Walker (ret.), the Honorable Alfred M. Wolin (ret.) and the Honorable William Cahill (ret.) in helping the parties reach their agreements.

possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class' interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quoting *Weinberger*, 698 F.2d at 74).

    2.    <u>Substance</u>

In determining whether a proposed settlement agreement is substantively fair, courts in this circuit have traditionally considered the following "*Grinnell*" factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation[.]

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted). Rule 23 also requires the court to consider several criteria – some of which overlap with the *Grinnell* factors – that inform whether the settlement is fair, reasonable, and adequate. These factors include whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23 factors do not displace the *Grinnell* factors, but rather identify the "primary procedural considerations and substantive qualities that should always matter" to the

6

court's decision, "focus[ing] the court … on the core concerns of procedure and substance[.]" Fed. R. Civ. P. 23(e)(2) comment on 2018 amendment. As set forth below, I conclude that considering each set of factors compels the conclusion that the court should approve the class settlements.

        a.      *Grinnell* Factors

*Complexity, expense, and duration of the litigation.* The DPPs assert that the parties have been litigating since 2015 and that antitrust cases are complicated, lengthy, and bitterly fought. *See* DPP Memo. at 11. Similarly, the IPPs note that if the litigation continued, it would involve additional expense, including conducting new discovery directed to the defendants' German parent companies (who were added as defendants in the IPP Amended Complaint in 2016) and briefing motions, including class certification and summary judgment motions. *See* IPP Memo. at 7. Accordingly, the complexity, expense, and likely duration of the litigation favor the proposed settlement.

*Class members' reactions.* The DPPs' notice program included mailing a detailed notice to 331 class members via first class mail, resulting in a deliverable rate of 91.3 percent. *See* DE 159-2 (Azari Decl.) ¶ 9, 12. In addition, the DPPs published notice in a trade magazine, issued an informational release to general media outlets, online databases and websites throughout the United States, and included an informational settlement website and toll-free telephone number that provided further information on the settlements. *See id.* ¶¶ 13-18.

The IPPs' notice program involved mailing 55,028 post card notices, as well as advertising in a national trade magazine, on the radio, online, and on social media. *See* DE 158-1 (Wheatman Decl.) ¶¶ 7-18. As of January 16, 2019, more than 2,000 claims had been filed, representing 11,055 parking heaters. Based on the legal notification firm's calculations, approximately 84,357 heaters were indirectly purchased. The IPPs thus report a response rate of 13.1 percent. The IPPs explain that they based the response rate on the number of heaters sold (as opposed to the number of claims filed) because their notice program was purposefully over-inclusive. *See* DE 164-1 (Wheatman

Supp. Decl.) ¶¶ 6-9. This calculation method is appropriate, and the response rate is higher than the typical response rate of one to ten percent in similar consumer cases. *See* IPP Letter at 1; Wheatman Supp. Decl. ¶ 9; *see also Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) (crediting testimony that response rates in consumer class actions generally range from one to twelve percent).

Finally, the class members' positive reaction to the settlements, indicated by the absence of any objections, also favors approval. *See* DPP Memo. at 12; IPP Memo. at 8; *Wal-Mart Stores Inc.*, 396 F.3d at 119 (class members' reaction to a settlement is "perhaps the most significant" *Grinnell* factor).

*The stage of the action and completed discovery.* The parties engaged in substantial formal and informal discovery, including the defendants' attorney proffers and their production of over 170,000 documents. *See* DPP Memo. at 13; IPP Memo. at 9. Moreover, the parties took adversarial positions in the litigation prior to settlement. By the time the parties negotiated their agreements, the defendants had filed several motions to dismiss. *See* Order dated April 12, 2017. Accordingly, this factor favors approval of the settlement. *See Berni*, 2019 WL 2341991, at *14 ("[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.") (alterations in the original) (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)); *see also Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982) (noting that extensive pretrial discovery is not a prerequisite to approval).

*The risk of establishing liability and damages and maintaining the class.* The DPPs admit that they face little risk in establishing liability because Webasto is a confirmed leniency applicant and one of the Espar defendants pleaded guilty. *See* DPP Memo. I. at 13. However, they also assert that the risk of establishing the impact on members of the class remains high because the defendants would vigorously contest the scope of damages. Indeed, the defendants set forth their specific arguments

8

that any damages would be limited, individualized, and difficult to prove. *See* DPP Supp. Letter at 4-7. Similarly, the IPPs note that the defendants have challenged their federal equitable monetary claim. *See* IPP Memo. 10. Accordingly, this factor does not weigh against approving the settlement.

*The defendants' ability to withstand greater judgment.* The DPPs acknowledge that they may be able to withstand a greater judgment. *See* DPP Memo. at 14-15. The IPPs report that they do not know whether the defendants could afford paying higher settlement amounts. *See* IPP Memo. at 11. However, even assuming that the defendants could withstand a greater judgment, this factor does not tilt the totality of the factors against recommending approval. *See Berni*, 2019 WL 2341991, at *15 ("[I]t does not follow that a defendant's ability to withstand a greater judgment militates against approval of the settlement.") (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)).

*The range of reasonableness of the settlement fund in light of the best possible recovery* and *in light of the attendant risks of litigation.* The defendants have agreed to pay a total of $12.2 million to the DPPs, which represents seven to ten percent of the dollar value of sales to customers potentially affected by the alleged conspiracy. *See* DPP Memo. at 15-16. The DPPs engaged Dr. Michael A. Williams to assist with modeling impact and overcharges. He analyzed the price floor agreement (the defendants' agreement to fix the price at $600) by comparing the product's price before the price floor to the price after the price floor was implemented. He also analyzed the second part of the conspiracy – to raise prices by a percentage – using a variety of methodologies. Dr. Williams' preliminary calculations revealed a working range of damages between $4.3 million and $20 million, with an average value of $12.2 million – the exact total amount of the settlement funds. *See* DPP Letter at 2-3. I therefore conclude that the settlement amounts are within a reasonable range.

The IPPs acknowledge two systemic problems with the overcharge data available as it relates to the IPPs: first, the transactional data only shows sales to direct purchasers; second, the data did

9

not lend itself to pass-on analysis, rendering it impossible to determine the overcharge to indirect purchasers. Further, the defendants' respective agreements affected their pricing differently. Relying on direct purchase data, the settlement amount of $7.7 million represents about 43 percent of the approximated overcharge of $17,925,000 to direct purchasers without accounting for treble damages. *See* IPP Memo. at 11-12. Courts in this circuit emphasize that "the dollar amount of the settlement by itself is not decisive in the fairness determination, and the fact that the settlement fund may equal only a fraction of the potential recovery at trial does not render the settlement inadequate." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) (quoting *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. at 131). Given the IPPs' litigation risks, I conclude that the IPP settlement amounts are likewise within a reasonable range.

### b. Rule 23 Factors

The first two Rule 23 factors – whether the class representatives and class counsel have adequately represented the class and whether the proposal was negotiated at arm's length, *see* Fed. R. Civ. P. 23(e)(2)(A)-(B) – correspond to *Grinnell* factors and favor approval for the same reasons discussed above. The remaining Rule 23 factors likewise favor approval for the following reasons.

*Adequacy of relief provided to the class.* As discussed above, the record demonstrates that the settlements provide adequate relief to the class by avoiding the cost and risk of further litigation. In addition, the parties have proposed an effective method for processing and allocating class members' claims. Each of the DPP agreements provides for automatic payments to class members who did not request to be excluded from the settlement. DE 159-2 (pp. 11-18) (DPP Class Notice) at 1. Each class member can view their estimated payments, which are calculated based on available purchase data provided by the defendants, by visiting the settlement website and entering unique identification numbers provided to them in the notice. *See id.* at 4.

The IPP class's allocation plan provides that all qualifying claimants are eligible to receive a *pro rata* share of the settlement fund based on the number of valid claims filed and the number of parking heaters purchased during the class period. *See* IPP Memo. at 15; DE 151-2 ¶ 2. As of January 18, 2019, 2,026 claims were filed for 11,055 parking heaters *See* IPP Letter at 1; Wheatman Supp. Decl. ¶¶ 8-9; *see also In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *7 ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (quoting *In re Am. Bank Note Holographies, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001)).

Finally, as set forth more fully below, the proposed awards of attorneys' fees are reasonable, and the parties filed the settlement agreements required by Rule 23(e)(3), including the attorneys' fees awarded pursuant to the settlements, on the docket. *See* Fed. R. Civ. P. 23(e)(3); *Berni*, 2019 WL 2341991, at *17 ("Generally, this provision has been read to reference the settlement agreement itself, including attorney's fees awarded pursuant to the settlement.").

*Equitable treatment of class members relative to each other.* Finally, under the agreements, the class members are treated equitably relative to each other. The DPP class members will be paid according to their relative purchases based on the defendants' purchase data; and the IPP class members will share equally from the fund in an amount to be determined based on the number of valid claims filed.

    C.    <u>Attorneys' Fees</u>

In class actions, when determining appropriate counsel fees, courts have used either the lodestar method or awarded fees based on a percentage of the settlement fund. *Cohan v. Columbia Sussex Mgmt., LLC*, 2018 WL 4861391, at *1 (E.D.N.Y Sept. 28, 2018) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). The lodestar method multiplies the hours reasonably expended on the case by a reasonable hourly rate. *Id.* The common fund method calculates the

11

amount as a percentage of the award to the class. *Id.* (citing *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417-22 (2d Cir. 2010)).

The trend in this circuit is toward the percentage method, "which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (internal quotation omitted). The lodestar method, in contrast, "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line item fee audits." *Id.* (internal quotation and brackets omitted). A court applying either method should consider the following *Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50.

The attorneys for each putative class seek a fee award equal to one-third of the settlement amount: $4,066,667 for the DPPs' counsel, and $2,566,667 for the IPPs' counsel. *See* DE 155-1 ("DPP Fees Memo.") at 2; DPP Memo. at 6, n. 6; DE 156-1 ("IPP Fees Memo.") at 7. As explained below, I conclude that the fee requests are reasonable and that the court should grant them.

The *Goldberger* factors favor approval of the claimed fees. The time and labor expended by class counsel is reasonable: the attorneys litigated several dismissal motions, engaged in substantial settlement negotiations, and have documented their claimed time with adequate contemporaneous billing records. Consumer class actions like these are complex, expensive, and lengthy. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010). The classes are represented by experienced counsel who would have to engage in intensive factual investigation to resolve the claims. Class counsel undertook these actions on a contingent basis and have received no payment for their work during the roughly four years that the case has remained pending. *See* DPP Fees

12

Memo. at 1-2; DE 156-3 at 4, 11, 20, 29, 38, 43, 52, 60, 69, 77, 85, 94 (attorneys' declarations); *Grinnell*, 495 F.2d at 470 (recognizing that risk is inherently associated with a case undertaken on a contingent fee basis); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.") (internal citations omitted). Further, as discussed more fully below the requested fee is consistent with the range of reasonable fees approved by courts in this circuit. Finally, public policy favors the award of reasonable attorneys' fees in class action settlements because the class members' small individual claims would not justify the expense of separate litigation. *See Berni*, 2019 WL 2341991, at *20.

A fee award equal to one-third of the settlement amount is reasonable in the circumstances of this litigation. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445-47 (E.D.N.Y. 2014) (adopting a graduated schedule that dictated, in relevant part, a fee award of 33 percent for settlements up to $10 million and 30 percent for settlements between $10 million and $50 million); *see also, e.g., Cohan*, 2018 WL 4861391, at *2 (awarding class counsel thirty percent of the $3.25 million settlement fund); *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases and approving as reasonable a fee award of one-third of the settlement fund in a wage case); *Massiah v. Metroplus Health Plan, Inc.*, 2012 WL 5874655, at *6 (E.D.N.Y. Nov. 20, 2012) (awarding class counsel thirty percent of the $4 million settlement fund in a wage case); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (awarding class counsel one-third of the $7.6 million settlement fund).

The claimed fees are also reasonable under the lodestar method. Class counsel's contemporaneous billing records reflect hourly rates that exceed those this court normally approves – $200 to $450 for partners, $250 to $395 for "of counsel" attorneys, $100 to $300 for associates, and $70 to $100 for paralegal assistants – but the overall claimed fees remain reasonable even after

reducing those rates to conform with local practices.[6] *See, e.g., Bennett v. Asset Recovery Sols., LLC*, 2017 WL 432892, at *7 (E.D.N.Y. Jan. 5, 2017) (citing *Ferrara v. CMR Contracting LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) (collecting cases)) (report and recommendation), *adopted*, 2017 WL 421920 (E.D.N.Y. Jan. 31, 2017); DE 155-3; DE 155-4; DE 155-5; DE 156-3.[7] Applying the reduced hourly rates, I calculate a reasonable lodestar for DPP Class Counsel as $1,724,490, which means that their claimed fee would represent a multiplier of 2.35. Similarly, I calculate a reasonable lodestar for IPP Class Counsel as $1,292,547, resulting in a multiplier of 1.98. These are well within what has been deemed reasonable for the common fund settlements in antitrust cases in this circuit. *See Carlson v Xerox Corp.*, 355 F. App'x 523, 526 (2d Cir. 2009) (noting that the average multiplier is 3.6 and the median is 3.1); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 448 (approving a 3.41 lodestar multiplier); *In re Worldcom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354-59 (S.D.N.Y. 2005) (approving a 4.0 lodestar multiplier); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (collecting cases).

D.   Costs

Counsel are entitled to reimbursement for reasonable litigation expenses. *See Berni*, 2019 WL 2341911, at *21 (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). The record adequately supports the DPPs' request for $155,275.52 in costs, and I respectfully recommend that the court approve it. *See* DE 155-3 through 155-6; DE 155-9; DE 155-10. Similarly, the record likewise establishes the IPPs' costs of $161,831.41; their request for $165,831.41 – or $4,000.00 more than the documented costs – appears to be a typographical or

---

[6] Moreover, some IPP counsel did not provide biographical information needed to assess a reasonable hourly rate. *See* DE 156-3 at 4-7.

[7] The parties might reasonably argue that they are entitled to higher hourly rates because the litigation of the antitrust claims in this case warrants a greater fee than other kinds of cases. The court need not resolve that issue because I conclude that the claimed fees are reasonable even after reducing the attorneys' hourly rates.

14

arithmetical error. *See* DE 156-3. I therefore respectfully recommend that the court approve an award of costs to the IPPs of $161,831.41 and direct the parties to distribute the remaining $4,000.00 among the eligible claimants on a *pro rata* basis.

      E.      <u>Incentive Awards</u>

Incentive awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Berni*, 2019 WL 2341991 at *21 (quoting *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015)).

> The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery."

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200–01 (S.D.N.Y. 1997).

The DPPs request incentive awards of $15,000 for each of the four class representatives: Triple Cities Acquisition LLC; National Trucking Financial Reclamation Services, LLC; Trailer Craft Inc; and Myers Equipment Corporation. *See* DPP Memo. at 1 n.1; DPP Fees Memo. at 18-19. At least one of the proposed awardees faced potential risk by participating in the lawsuit, believing that Espar would cancel their dealership and refuse to sell them more parking heaters if they continued with the antitrust complaint. In addition, the representatives undertook substantial discovery, responding to 95 requests for production and 19 interrogatories and collectively producing thousands of pages of documents to the defendants. Accordingly, I find that the service amounts are warranted and within the range of what other courts have found to be reasonable. *See* DPP Letter at 7; *see also Dupler*, 705 F. Supp. 2d at 245–46 (collecting cases).

The IPPs request awards in the amount of $2,000 for each of the seven class representatives: Davidson Transfer LLC; Thomason Johnson; Mead's Automotive LLC; North Jersey Truck Center Inc.; Raccoon Valley Transport Inc.; Regional International Corp.; and Jim Steger. IPP Fees Memo. at 14-15; IPP Letter at 3. The IPPs participated in discovery and assisted IPP counsel by providing background information, reviewing extensive discovery requests, and furnishing declarations regarding their discovery searches and productions. *See* IPP Letter at 3.

Accordingly, I find the incentive awards requested by the DPPs and the IPPs to be reasonable. *See Dupler*, 705 F. Supp. 2d at 245-46 (approving incentive awards of $5,000 and $25,000).

III.  Recommendation

For the reasons set forth above, I respectfully recommend that the court certify the proposed settlement classes, approve the settlements, and grant the motions for attorneys' fees and costs (with certain costs adjusted as set forth above).

IV.  Objections

Any objections to this Report and Recommendation are due by August 29, 2019. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
August 15, 2019

                                                       /s/
                                       James Orenstein
                                       U.S. Magistrate Judge